**APPEAL CASE NOS. 11-56243, 11-56244**
**CROSS-APPEAL CASE NOS. 11-56257, 11-56259**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

LAURA SIEGEL LARSON
*Plaintiff, Counterclaim-Defendant, and Appellant,*

v.

WARNER BROS. ENTERTAINMENT INC., DC COMICS
*Defendants, Counterclaimants, and Appellees.*

---

**APPELLANT LAURA SIEGEL LARSON'S RESPONSE TO CROSS-APPELLANT AND APPELLEES DC COMICS' "NOTICE OF RELATED APPEALS AMENABLE FOR ASSIGNMENT TO PRIOR PANEL AND FOR CONSOLIDATED BRIEFING"**

---

Appeal From The United States District Court for the Central District of California,
Case No. CV-04-08400 ODW (RZx), Hon. Otis D. Wright II

---

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff
*mtoberoff@ipwla.com*
Keith G. Adams
*kgadams@ipwla.com*
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff-Appellant,*
*Laura Siegel Larson, individually and*
*as personal representative of The Estate of*
*Joanne Siege*

Plaintiff-Appellant Laura Siegel Larson ("Appellant" or "Larson") hereby responds to Cross-Appellant and Appellee DC Comics' ("DC") motion for assignment to a specific panel styled "Notice of Related Appeals Amenable For Assignment To Prior Panel And For Consolidated Briefing" ("Motion" or "Mot.; Appeal Nos. 13-56243/13-56244, Dkt. No. 7-1, Cross-Appeal Nos. 13-56257/13-56259, Dkt. No. 6-1). The questions before the Court in these appeals are significantly different from those decided previously. This suggests an absence of any particularly compelling reason for concluding that these appeals must be assigned to the same prior panel. Appellant commends the issue of panel selection, to the sound discretion and practical logistics of the Court.

## BACKGROUND

The first current appeal and cross-appeal (Appeal No. 13-56243, Cross-Appeal No. 13-56257, the "Siegel Superman Appeals") are from *Laura Siegel Larson v. Warner Bros. Entertainment Inc.*, C.D. Cal. Case No. 04-08400 ODW (RZx)( the "Superman case"). The second (Appeal No. 13-56244, Cross-Appeal No. 13-56259, the "Siegel Superboy Appeals") concern a different case, *Laura Siegel Larson v. Time-Warner Inc.*, C.D. Cal. Case No. 04-08776 ODW (RZx)(the "Superboy case") that has never been up on appeal.

DC lobbies to have these two different appeals heard by the panel that in

1

2012 heard the prior appeal of a Fed. R. Civ. Proc. 54(b) judgment in the Superman case (Appeal No. 11-55863, Cross-Appeal No. 11-56034) (the "*Larson* 54(b) Appeal"), the appeal by different parties of the denial of an Anti-SLAPP motion regarding tort and unfair competition claims in a third case, *DC Comics v. Pacific Pictures,* C.D. Cal. Case No. 10-CV-03633 ODW (RZx) ("*PPC*") (Appeal No. 11-56934; the "*PPC* Anti-SLAPP Appeal"), and will decide the pending *PPC* appeal by different parties (Joseph Shuster's heirs) of a Fed. R. Civ. Proc. 54(b) judgment in *PPC* (Appeal No. 12-57245; the "*PPC* Shuster Appeal").[1]

## ARGUMENT

The decision to assign a panel is, of course, within the Court's ample discretion, and does not entail a right or entitlement of any party.

### 1. DC's "Panel Shopping"

Previously in the *Larson* 54(b) Appeal and *PPC* Anti-SLAPP Appeal, DC filed a similar, unsuccessful "Motion … for Assignment to a Specific Panel" (Appeal No. 11-55863, Dkt. 29-1; Appeal No. 11-56034, Dkt. 28-1 ), arguing that these appeals must be submitted to the same panel that had heard oral argument in a then-pending writ proceeding in *Pacific Pictures* (Appeal No. 11-71844; the

---

[1] Appellee and Cross-Appellant Warner Bros. Ent. Inc. is not a party to the *PPC* case which involves six defendants who are not parties to the Siegel Appeals.

2

"*PPC* Writ") due to purported "related" issues and "judicial efficiency."[2] The truth was simply that the *PPC* Writ hearing had gone well for DC, *see* http://www.ca9.uscourts.gov/media/view.php?pk_id=0000008647, so it wanted the same panel to decide *all* appeals.

To lobby for this, DC first filed with its Notices of Appeal, "Statements of Related Cases" purportedly "[p]ursuant to Ninth Circuit Rule 28-2.6," highlighting the judges who would decide the PPC Writ, even though Circuit Rule 28-2.6 calls for such "statement" with a party's "initial brief," and does not call for panel identification. *See* C.D. Cal. Case No. 04-08400, Dkt. Nos. 674, 674-2, 675. DC's motion was duly denied. Appeal No. 11-55863, Dkt. No. 37; Appeal No. 11-56034, Dkt. No. 36.

DC has followed the same tact here, after another panel decided The *PPC* Anti-SLAPP Appeal and *Larson* 54(b) Appeal in favor of DC (Appeal No. 11-56934; Dkt. No. 65; Appeal No. 11-55863, Dkt. No. 70, Appeal No. 11-56034, Dkt. No. 69). DC again filed with its Notices of Cross-Appeal, separate

---

[2] DC omitted that another 9th Circuit panel had already considered appeals of the district court's denial of an earlier anti-SLAPP motion and a subsequent one-sided discovery stay in *PPC*. *See* Appeal Nos. 10-56594, 10-56980, 10-73851. In those appeals, unlike the *PPC* Writ Appeal, there had been extensive briefing as to the historical and procedural background of the Superman case and the purpose/scope of California's Anti-SLAPP law. *See, e.g.,* Appeal No. 10-56594, Dkt. Nos. 5-1 at 4-19; 7-1 at 3-7; Appeal No. 10-73851 at Dkt. Nos. 1-3 at 4-12, 20-25, 5-1 at 3-9.

3

"Statements of Related Cases," highlighting its new panel of choice, purportedly "[p]ursuant to Ninth Circuit Rule 28-2.6," which again, calls for neither. *See* C.D. Cal. Case No. 04-8400, Dkt. No. 740-1; C.D. Cal. Case No. 04-8776, Dkt. No. 259-1. DC then filed the instant Motion styled as a "Notice of Related Appeals" though it had already filed *two* "Statements of Related Cases."

Suffice it to say, DC would not have filed either of its motions if the above panels had not favored its positions.

### 2. Panel Assignments

The Clerk of the Court has primary responsibility for case management and maintenance of the docket. *See* Fed. R. App. P. 45(b). The Court, like all other circuits, follows the rule of neutral random panel assignments. *See* 9th Cir. Rules, Court Structure & Procedures, § (E)(2). It sometimes resorts, however, to predetermined panels. When a case is remanded from the Supreme Court, it will be reheard by the same panel. *Id*., § (E)(4). When there is a subsequent appeal in the same case, the prior panel is routinely notified and given an opportunity to hear the appeal, but has no obligation to do so. 9th Cir. General Order 3.7 (specific internal procedure for notifying original panel of "comeback cases"). The procedure recognizes that this may be inconvenient due to logistics or that the passage of time and/or limited nature of a panel's prior review may obviate any efficiencies from reassignment to the same panel. As such, a prior panel may, and

4

often does, decline, and the case is returned to the pool for random assignment. *See* Goelz & Watts, Cal. Practice Guide: Federal Ninth Circuit Civil Appellate Practice (Rutter 2013)(cited by DC), § 10:27.1 ("In most ["comeback"] cases, the original panel instructs the clerk to assign the new appeal to a new panel largely because of logistics.")(omitted by DC).

### 3. A Predetermined Panel May Not Result In Efficiency Gains

The current appeals focus on different factual and legal issues, raising the practical question of whether the appeals would actually benefit from the panel's research last year.

The short memorandum disposition of the *Larson* 54(b) Appeal narrowly focused on whether an acceptance in an October 19, 2001 letter by the Siegel heirs' (the "Siegels") ex-attorney constituted an agreement. The panel held that an agreement was reached on that date; but refrained from delving into subsequent events or other legal issues, as superfluous to its focused decision, and remanded to the district court. *See* Appeal No. 11-55863, Dkt. No. 70; Cross-Appeal No. 11-56034, Dkt. No. 69.

The instant Siegel Superman Appeals concern, without limitation: whether the district court on remand (i) erred in holding that a statement that the Siegels' "would transfer" their recaptured Superman copyrights constituted a *present* copyright assignment; (ii) erred in deciding that in 2002, the Siegels did not

5

rescind their acceptance, and that DC did not by its inaction from 2002-2004 acquiesce in their rescission/repudiation or abandon the transaction, as each defense, at a minimum, raised factual issues barring summary judgment. C.D. Cal. Case No. 04-8400, Dkt 717, 735. 740. Both parties appeal the district court's 2008 work-for-hire rulings under the 1909 Copyright Act. *See* C.D. Cal. Case No. 04-8400, Dkt. Nos. 292, 560, 738, 740. In addition, DC appeals the court's 2008 rulings as to: (i) the sufficiency of the Siegels' termination under the 1976 Copyright Act and (ii) the statute-of-limitations for declaratory relief thereunder – *See* C.D. Cal. Case No. 04-8400, Dkt. No. 740. This involves a very dense record.

The Siegel Superboy Appeals concern a different case (C.D. Cal. Case No. 04-8776) and district court record and center on a different copyright notice of termination, served/filed by the Siegels in 2002 (effective November 17, 2004) pertaining to a different character – "Superboy."[3] Review of the complaints in the Superboy and Superman cases reveals that, despite surface commonalities, they are two very different cases, involving distinct characters, copyrights, historical facts and applications of law. *Compare* C.D. Cal Case No. 04-08400, Dkt. No. 644

---

[3] In a 1947 action between the parties' predecessors, *Jerome Siegel and Joseph Shuster v. Nat'l Comic Publ'ns, Inc*., N. Y. Sup. Ct., Case No. 1099-1947, it was adjudicated that "Superboy" is a distinct intellectual property originally owned solely by Jerome Siegel, and *Jerome Siegel et al. v. Nat'l Periodical Publ'ns, Inc*., 508 F.2d 909 (2d Cir. 1974), affirmed the *res judicata* effect of this 1947 decision.

(Third Amended Complaint) *with* C.D. Cal Case No. 04-08776, Dkt. No. 1 (Complaint).  At its core, the Superman case is an action for an *accounting* of profits, and focuses on DC's failure since 1999 to account to the Siegels (under state law) as joint owners of the original "Superman" copyrights.  C.D. Cal Case No. 04-08400, Dkt. No. 644, ¶¶ 46-48.  By contrast, the Superboy case concerns the Siegels' recovery in 2004 of Jerome Siegel's "Superboy" copyright.  C.D. Cal Case No. 04-08776, Dkt. No. 1, ¶ 46.  It is a federal *copyright infringement* action wherein plaintiffs seek injunctive relief against defendants.  *Id.*, ¶¶ 61-75, 103-07.

Perhaps most importantly, the Siegel Superboy Appeals turn on a different overriding legal issue:  whether the district court erred in holding that the Siegels transferred to DC in *2001*, the Superboy copyrights they recovered in 2004 pursuant to their *2002* termination notice, contrary to 17 U.S.C. § 304(c)(6)(D) which expressly prohibits the anticipatory assignment of terminated copyrights prior to service of the applicable termination notice.  *See* C.D. Cal. Case No. 04-8776, Dkt. 239-40, 242.  If Appellant prevails on this threshold issue, as she should, DC's 2001 contract defense (and the many remaining state law issues it entails) disappear, and the case would be remanded for adjudication of Appellant's Superboy copyright infringement claim.  Furthermore, as the Siegel Superboy Appeals are *not* a "comeback case," DC's repeated citations to 9th Cir. General Order 3.7 and 9th Cir. Rules, Court Structure & Procedures, § (E)(4) are

inapplicable to it, and the general rule of random assignment applies.

The prior *PPC* Anti-SLAPP Appeal, relied on by DC's Motion, is also totally different.  It focused on whether DC's state-law tortious interference and unfair competition claims in *PPC* arise from petition activity protected by California's Anti-SLAPP statute.  There is no overlap whatsoever between the *PPC* Anti-SLAPP Appeal and the current appeals.

The pending *PPC* Shuster Appeal, relied on by DC, likewise involved a different case, a different statutory termination by a different party, and a very different set of facts and legal issues, *i.e.*, whether the district court erred in holding that a 1992 pension agreement with Joe Shuster's siblings (who held no termination rights) eliminated the termination right later granted to the Shuster estate by the Copyright Term Extension Act, Tit. I, Pub. L. No. 105-298, 112 Stat. 2827 (Oct. 27, 1998).  *See* Appeal No. 12-57245, Dkt. Nos. 11, 24, 28.  Though the *PPC* Shuster Appeal and current appeals both concern Superman, there is little overlap between the two from a practical efficiency standpoint.

Given the different facts, law and issues presented by the current appeals, there do not appear to be tangible efficiency gains from predetermining the panel as opposed to neutral random selection.

8

## 4. The Superman and Superboy Appeals Should Not Be Consolidated As They Present Different Issues Arising From Different District Court Records, And, In Any Event, Briefing Should Not Be Consolidated

Since the outset of the Superman and Superboy cases, DC has pressed unsuccessfully to consolidate the two for perceived tactical advantage. *See* C.D. Cal Case No. 04-08400, Dkt. Nos. 20-21 (DC's motion to consolidate). Larson opposed consolidation as it would lead to obfuscation of the distinct factual and legal issues presented. *Id*., Dkt. No, 26. As discussed above, these are very different cases, involving unique characters, copyrights, facts and law. To enhance efficiency Larson offered to consolidate discovery. *Id*. DC's motion to consolidate was *denied* by the district court, except as to discovery. *Id*., Dkt. No. 30. This was "law of the case," and was not reconsidered.

Despite this express order, DC consolidated its Superman and Superboy counterclaims in identical First Amended Counterclaims filed in the separate Superman and Superboy cases. *See* C.D. Cal Case No. 04-08400, Dkt. No. 42; C.D. Cal Case No. 04-08776, Dkt. No. 44. Contrary to this order, DC also filed the same consolidated summary judgment motion in each case, necessitating consolidated oppositions by Larson to avoid more confusion, and leading to one judgment which refers separately to each case. *See* C.D. Cal Case No. 04-08400, Dkt. Nos. 702, 709, 735; C.D. Cal Case No. 04-08776, Dkt. Nos. 222, 228, 254.

9

DC circularly uses its own tactics to justify its arguments. Mot. at 3.

DC's motion "for consolidated briefing" assumes that these separate cases – which were specifically *not* consolidated below – should be consolidated on appeal as purportedly having the "same district court record, and the same underlying briefing and orders." Mot. at 3. These cases, however, involve quite different district court records, briefing and orders. *Compare e.g*., C.D. Cal Case No. 04-08400, Dkt. Nos. 644, 645, 160, 161, 194, 293, 336, 339, 348, 349, 353, 357, 361, 362, 560 *with* C.D. Cal Case No. 04-08776, Dkt. Nos. 1, 2, 51, 56, 67,70, 76,78, 85, 103, 109, 111, 151, 156, 166, 175. DC fails to establish sufficient grounds for consolidation, and combining the appeals would needlessly complicate their resolution. It also makes little sense to merge the Superboy and Superman appeals as the former turns on a streamlined copyright issue (*see* section 3 at 7, *supra*) conducive to more expeditious resolution.

If the two appeals are ultimately assigned to the same panel, briefing should not be consolidated as this will further increase the likelihood of confusion. If briefing is consolidated, Appellant respectively requests pursuant to Fed. R. App. P. 27 and 9th Circuit Rule 32-2 that the word limit for Appellant's opening brief be extended from 14,000 words to 17,000 words, and her reply brief be extended from 7,000 words to 8,500 words, to accommodate the two different appeals.

Finally, DC's suggestion that the Court "impose" a consolidated schedule is curious given that the schedules in the Superman and Superboy appeals are already identical. *See* Appeal/Cross-Appeal Nos. 13-56243/13-56257, 13-56244/13-56259, Dkt. No. 1-1. The same schedule should apply.

## CONCLUSION

DC's tactical motion should be denied as the relief sought is not likely to enhance efficiency, and is likely to cloud resolution of these distinct appeals.

Dated:  August 5, 2013       TOBEROFF & ASSOCIATES, P.C.


/s/ Marc Toberoff
Marc Toberoff
Attorneys for Appellant, Laura Siegel Larson, individually, and as personal representative of the Estate of Joanne Siegel

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 27(d) and 32(a), I certify that the Appellant Laura Siegel Larson's brief is proportionately spaced, has a typeface of 14 points or more, and does not exceed 20 pages.

Dated:  April 5, 2012            TOBEROFF & ASSOCIATES, P.C.

/s/ Marc Toberoff
_____
Marc Toberoff

Attorneys for Appellant, Laura Siegel Larson

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served electronically by the Court's ECF system and by first class mail on those parties not registered for ECF pursuant to the rules of this court.

Dated: April 5, 2012     TOBEROFF & ASSOCIATES, P.C.

/s/ Marc Toberoff

Marc Toberoff

Attorneys for Appellant, Laura Siegel Larson